United States District Court
Southern District of Texas
**ENTERED**
October 14, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| WARREN PIERRE CANADY, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 2:20-CV-00112 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Warren Pierre Canady is an inmate in the Texas Department of Criminal Justice ("TDCJ") and is currently incarcerated at the Beto Unit in Tennessee Colony, Texas. Proceeding *pro se*, Canady filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on May 1, 2020. (D.E. 1, 3). Liberally construed, Canady claims that McConnell Unit officials violated his due process rights under the Fifth and Fourteenth Amendments during disciplinary proceedings. Respondent filed a motion for summary judgment, to which Canady has responded. (D.E. 39, 42, 43). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 39) be GRANTED and Canady's § 2254 petition be DENIED. It is further recommended that a Certificate of Appealability ("COA") be denied.

### I. JURISDICTION

Jurisdiction and venue are proper in this court because the prison disciplinary hearing about which Canady complains occurred at the McConnell Unit in Beeville, Bee County, Texas, which is located in the Corpus Christi Division of the Southern District of

Texas.  28 U.S.C. 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## II.  BACKGROUND

### a.  Disciplinary and Grievance Records

Canady is serving a 45-year sentence, imposed on June 30, 1995, after being convicted of theft.  (D.E. 37-3 at 2).  On January 11, 2011, Canady also received a five-year concurrent sentence for credit/debit card abuse.  (*Id.* at 4).  Canady does not complain about his convictions, however, but instead challenges the results of a disciplinary hearing.  (D.E. 1 at 6-7).

In August 2019, Canady was charged in an offense report with committing an act that is a felony under Texas law, specifically, knowingly presenting for filing or causing to be presented for filing fraudulent financial statements, in violation of Texas Penal Code § 37.101.  (D.E. 37-1 at 4).  The charging officer indicated that Canady was found in possession of documents constituting a fraudulent financial scheme, including non-negotiable bonds, indemnity agreements, common law copyright schemes, and other documents.  (*Id.*).  The documents are available in the record.  (*See id.* at 6-25).

The hearing record indicated that Canady stated in a written statement that he never filed any fraudulent documents and that he was authorized to possess the documents by the Fifth Circuit.  (*Id.* at 38).  The Fifth Circuit's opinion on a prior § 2254 filed by Canady, reversing and remanding for a factual determination of whether Canady was given fair warning that possessing UCC materials violated prison rules, is available in the record.  (*Id.* at 28-35).  The charging officer stated that Canady sought to mail a

2

letter asking for Federal Reserve addresses, which indicated to the officer that he might be trying to conduct a fraudulent "sovereign citizen" scheme. (*Id.* at 36). The officer subsequently searched Canady and found the documents supporting his suspicion. (*Id.*). Following the hearing, Canady was found guilty and lost 45 days of recreation privileges, 60 days of commissary privileges, 60 days of telephone privileges, and had his line class reduced. (*Id.* at 3, 36).

In his Step 1 grievance, Canady argued that he was found guilty based on the charging officer's allegations and report, but that there was no evidence to support the allegations. (D.E. 37-2 at 3). He argued that he never attempted to file any fraudulent documents or that mere possession of the documents constituted wrongdoing. (*Id.*). The warden noted the grievance and, after a review, concluded that the disciplinary case and resulting punishment were valid. (*Id.* at 4). Canady did not file a Step 2 grievance.

    **b.**    **Petition and Claims**

In his petition and attached memorandum, Canady first contends that he was not given advance notice that U.C.C. documents were prohibited by TDCJ policy or considered a felony under Texas law. (D.E. 1 at 6; D.E. 3 at 3-4). Second, he argues that the hearing officer violated TDCJ policy by holding his disciplinary hearing more than seven days after the alleged violation. (D.E. 1 at 6; D.E. 3 at 4-5). Finally, Canady asserts that he has a liberty interest in being released to mandatory supervision and he should be released. (D.E. 1 at 7; D.E. 3 at 5).

### III.  DISCUSSION

In the motion for summary judgment, Respondent argues that Canady's loss of privileges and reduction in line class are not cognizable under federal habeas law because changes in the condition of confinement do not implicate due process.  (D.E. 39 at 5-7).  Further, Respondent contends that Canady's claim regarding mandatory supervision is meritless because he has no liberty interest in parole and does not currently meet the requirements for mandatory supervision.  (*Id.* at 8-9).

Canady responds by reiterating the merits of his claims.  (D.E. 42 at 3-6).  He argues that, while Texas inmates do not necessarily have a liberty interest in parole, such an interest does exist when the delay in release is more than *de minimis*.  (*Id.* at 5).

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  The Supreme Court has described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken in a disciplinary proceeding without due process and acknowledged that, under certain circumstances, a state may create liberty interests that are protected by the Due Process Clause.  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974) and *Meachum v. Fano*, 427 U.S. 215 (1976)).  However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

The Court further noted that the punishment of incarcerated prisoners effectuates

prison management and prisoner rehabilitative goals and that, while prisoners do not shed all constitutional rights at the prison gate, "'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 485 (quoting *Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 US. 119, 125 (1977), and *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* The touchstone of the inquiry into the existence of a protected, state-created liberty interest is the nature of the condition in relation to the ordinary incidents of prison life. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S at 484).

"[S]peculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995) (*citing Meachum*, 427 U.S. at 229, n.8). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, a right the Texas legislature has specifically denied creating).

In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and

control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citing Tex. Code Crim. P. art. 42.18 § 2(2)).[1] Prisoners earn good time credits that are added to their actual days served in prison to calculate their release date. Tex. Gov't Code § 508.147. The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time. *Malchi*, 211 F.3d at 957-958.[2] The mandatory supervision program in effect when Canady was convicted specified that a prisoner who was not on parole "shall be" released on mandatory supervision when his actual time served and accrued good time credit equaled the total term of his sentence. *Teague*, 482 F.3d at 774-75. In contrast to mandatory supervision, prisoners have no right or constitutional expectancy of early release on parole. *Id*. at 776.

Here, Canady cannot make out a due process cause of action based on either his reduction in line class or his loss of other privileges. First, as to his reduction in line class, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and, in turn, on the amount of time he is in custody. However, Canady has no protectable liberty interest in a particular custodial classification. *Harper*, 174 F.3d at 719. Specifically in the case of a line class designation, the Fifth Circuit has held that the timing of an inmate's release is

---

[1] Currently located at Tex. Gov't Code § 508.001(5).

[2] The Fifth Circuit's holding applied to a previous version of the Texas mandatory supervision program, which has since been amended. *See Malchi*, 211 F.3d at 958. The Fifth Circuit has concluded that prisoners have a protected liberty interest under the amended version as well. *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

6

too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status. *Malchi*, 211 F.3d at 959. Thus, Canady cannot make out a due process claim based on his reduction in line class. Canady's loss of other privileges does not present an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484-87 (concluding that even placement in disciplinary segregation does not present a dramatic departure from the basic conditions of an offender's sentence). Although Canady could have a liberty interest in a loss of good time, he did not lose any good time as a result of his disciplinary conviction. (D.E. 37-1 at 3, 36).

Finally, as to Canady's claim that he should be released to mandatory supervision, he has not established that he is eligible for mandatory supervision. Canady will be eligible for mandatory supervision when his actual time served and accrued good time equal his total sentence of 45 years' imprisonment. *See Teague*, 482 F.3d at 774-75. Based on a time calculation worksheet that Canady filed in this case, his projected release date is September 6, 2026. (D.E. 4 at 45). As of September 20, 2019, he had served 19 years, 9 months, and 9 days of actual time, and accrued 6 years, 4 months, and 3 days of good time, for a total of 26 years, 1 month, and 12 days. According to the TDCJ website, Canady's projected release date is now November 15, 2025.[3] There is no evidence in the record refuting these calculations or indicating that Canady's combined actual time served and accrued good time equal his 45-year term of imprisonment. Accordingly,

---

[3] Release date information is available on the TDCJ by searching for an offender's name. *See* https://offender.tdcj.texas.gov/OffenderSearch/.

Canady's § 2254 petition should be denied.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Canady has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, because reasonable jurists would not find it debatable that Canady failed to state a claim for a violation of a constitutional right, it is recommended that a COA be

denied.

## V. RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 39) be GRANTED and Canady's § 2254 petition be DENIED. In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 14th day of October, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).